Exhibit #3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-61069-Dimitrouleas/Snow

**MARK W. LILLY**

    **Plaintiff/Counterclaim-Defendant**

v.

**SANTANDER CONSUMER USA INC.
d/b/a CHRYSLER CAPITAL**

    **Defendant/Counterclaim-Plaintiff**

_____ /

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO NOS. 1-4 OF
PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Defendant Santander Consumer USA Inc. d/b/a Chrysler Capital ("Chrysler Capital"), by and through their undersigned attorneys, serves its Amended Objections and Responses to Plaintiff Mark W. Lilly's Second Set of Requests for Production of Documents, as follows:

**DEFINITIONS & INTRODUCTION**

A.    The definitions and instructions included as part of Chrysler Capital's Objections and Responses to Plaintiff's First Set of Requests for Production of Documents and Things to Plaintiff served on Mark W. Lilly ("Plaintiff") on November 4, 2020 are incorporated herein by reference, unless otherwise stated herein.

**REQUESTS FOR PRODUCTION**

1.    During Plaintiff Mr. Lilly's meeting with Chrysler Capital's regional representative Greg Gordon to present Mr. Lilly's "ONLY PAY FOR WHAT YOU USE®" program to Chrysler Capital, at the request and referral of FCA executive: Bob Clark, Mr. Gordon shared Chrysler Capital's past and recent lease training they offered to their FCA dealers. At that meeting, Mr.

1

Gordon showed Mr. Lilly a specific lease training tool: a sales-person placemat, which was the exact same "Placemat" (referred to as Exhibit 51-3 in this case) that Plaintiff had discovered at an FCA dealership on June 22, 2017. Mr. Gordon stated to Mr. Lilly that the Placemat was utilized during Chrysler Capital's provided lease training conducted both in FCA stores as well as group training sessions for multiple regional FCA dealers at offsite locations, like hotels or FCA facilities. Hence, Plaintiff requests Defendants to produce and provide Plaintiff a copy of this Placemat.

RESPONSE:

Chrysler Capital objects to this Request to the extent that it contains factual assertions that are neither proven nor relevant to any request for documents or any claims or defenses in this action. Subject to and without waiver of the foregoing, following a reasonable search, Chrysler Capital did not locate a copy of the Placemat, attached to the Amended Complaint as Exhibit 3. [DE 51-3]. Chrysler Capital has produced scanned copies of 2 lease sales placemats that Greg Gordon has in his possession, custody or control. See CC00074-75, CC00076-77.

AMENDED RESPONSE:

Chrysler Capital objects to this Request to the extent that it contains factual assertions that are neither proven nor relevant to any request for documents or any claims or defenses in this action.

Subject to and without waiver of the foregoing, following a reasonable search, Chrysler Capital did not locate a copy of the Placemat, attached to the Amended Complaint as Exhibit 3. [DE 51-3]. EFG provided Chrysler Capital a copy of the Placemat, which Chrysler Capital produced to Plaintiff. Chrysler Capital has produced scanned copies of 2 lease sales placemats that Greg Gordon has in his possession, custody or control. *See* CC00074-75, CC00076-77. Greg

Gordon shared a copy of "Leasing vs. Buying" educational flyer (CC00076-77) with Plaintiff at their January 16, 2019 meeting. EFG provided Chrysler Capital a PDF copy of a version of the Placemat. *See* CC00576-77. EFG advised Chrysler Capital that EFG identified no further responsive documents within EFG's possession, custody or control relating to the Placemat.

2.    As Defendant has stated repeatedly, and Plaintiff has acknowledged, that Chrysler Capital did not produce the Placemat, however it has been established, first, by Mr. Gordon's admission to Mr. Lilly during their meeting, that Chrysler Capital hired an outside vendor to conduct Chrysler Capital's lease training for their FCA dealers. This vendor was Enterprise Financial Group (EFG), as this was confirmed to Mr. Lilly during a phone call with EFG representative Steve Roennau in July 2019. This fact was also public information posted on EFG's website, claiming to have provided lease training, and other services for FCA. EFG also offers their lease training as in-dealership services on their website, which also includes providing dealers with the Placemat. Hence, Plaintiff requests Defendant to provide any and all evidence of Chrysler Capital's relationship and/or hiring, contracting or paying EFG, to provide services for Chrysler Capital, including providing lease training to their FCA dealers. In addition, provide copies of all related lease training materials either provided by Chrysler Capital or any of its hired vendors, such as EFG presentations, dealer provided materials and tools including the Placemat, including but not limited to; training curriculum, salesperson customer interaction scripts, training presentations, in-person training provided either in-dealership, at a remote location or online.

RESPONSE:

Chrysler Capital objects to this Request to the extent that it contains factual assertions that are neither proven nor relevant to any request for documents or any claims or defenses in

3

91458938v.1

this action. Chrysler Capital further objects to this Request on the ground that it is overbroad and not proportional to the needs of the case to the extent that it seeks "any and all evidence of Chrysler Capital's relationship and/or hiring, contracting or paying EFG, to provide services for Chrysler Capital, including providing lease training to their FCA dealers," regardless of whether such evidence is connected to the Placemat or Plaintiff's claims.

Subject to and without waiver of the foregoing, following a reasonable search, Chrysler Capital found no "evidence of Chrysler Capital's relationship and/or hiring, contracting or paying EFG" concerning the Placemat or lease training services. Chrysler Capital has produced scanned copies of lease training curriculum, an agenda, and related documents from training sessions offered by EFG in or about 2014. See CC00078, CC00079-122, CC00123-141

AMENDED RESPONSE:

Chrysler Capital objects to this Request to the extent that it contains factual assertions that are neither proven nor relevant to any request for documents or any claims or defenses in this action. Chrysler Capital further objects to this Request on the ground that it is overbroad and not proportional to the needs of the case to the extent that it seeks "any and all evidence of Chrysler Capital's relationship and/or hiring, contracting or paying EFG, to provide services for Chrysler Capital, including providing lease training to their FCA dealers," regardless of whether such evidence is connected to the Placemat or Plaintiff's claims. Chrysler Capital limits the scope of this request to "evidence of [Chrysler Capital's] or EFG's working relationship concerning the Placemat and related training materials." [DE 103 at 7].

Subject to and without waiver of the foregoing, following a reasonable search, Chrysler Capital found no "evidence of [Chrysler Capital's] or EFG's working relationship concerning the Placemat and related training materials." Chrysler Capital has produced scanned copies of lease

4

91458938v.1

training curriculum, an agenda, and related documents from training sessions offered by EFG in or about 2014. *See* CC00078, CC00079-122, CC00123-141. EFG provided Chrysler Capital with training curriculum, invoices, and related documents for services provided to Chrysler Capital in 2013 and 2014. *See* CC00353-575, CC00578-589. None of these services or materials contain the Placemat. EFG advised Chrysler Capital that EFG identified no further responsive documents within EFG's possession, custody or control relating to evidence of Chrysler Capital's or EFG's working relationship concerning the Placemat and/or related training materials.

3.      Produce all documents and things concerning any and all revenue, fees or consideration received by Defendant's or by any of its vendors, including EFG, paid by FCA dealers for any and all lease training, including the Placemat, provided by Defendant, or by its vendors.

RESPONSE:

Chrysler Capital objects to this Request on the ground that it is overbroad and not proportional to the needs of the case to the extent that it seeks documents "concerning any and all revenue, fees or consideration received by Defendant's or by any of its vendors, including EFG, paid by FCA dealers for any and all lease training, including the Placemat, provided by Defendant, or by its vendors," regardless of whether such evidence is connected to the Placemat or Plaintiff's claims. Chrysler Capital further objects to this Request on the ground that it is duplicative of Request for Production Nos. 6 and 7. Chrysler Capital further objects to this Request on the ground that the Request assumes that Chrysler Capital charged (or charges) FCA dealers for "lease training, including the Placemat." Chrysler Capital does not charge dealers, including FCA dealers, for lease training services.   Following a reasonable search, Chrysler Capital was not able to identify any responsive, non-privileged documents within Chrysler

5

Capital's possession, custody or control relating to documents "concerning any and all revenue, fees or consideration received by" Chrysler Capital for the Placemat and lease training services.

AMENDED RESPONSE:

Chrysler Capital objects to this Request on the ground that the Request assumes that Chrysler Capital charged (or charges) dealers for "lease training, including the Placemat." Chrysler Capital does not charge dealers, including FCA dealers, for lease training services.

Following a reasonable search, Chrysler Capital identified no responsive documents within Chrysler Capital's possession, custody or control relating to documents "concerning any and all revenue, fees or consideration received by" Chrysler Capital for the Placemat and lease training services. EFG provided Chrysler Capital with invoices relating to lease training services that EFG provided Chrysler Capital in 2013 and 2014. *See See* CC00353-575, CC00578-589. EFG advised Chrysler Capital that it identified no further responsive documents within its possession, custody or control relating to documents "concerning any and all revenue, fees or consideration received by" Chrysler Capital or EFG for the Placemat and/or lease training materials utilizing the Placemat.

4.     Produce all documents and things concerning the existence of any and all insurance policies or agreements Defendant can identify that Chrysler Capital carries on its own, or either of its parent companies (Santander or FCA), or that any of its vendors, including EFG, relative to this action carry, may have any type of "errors and omissions" insurance coverage that might be liable to satisfy all or part of a possible judgment or settlement in this action.

RESPONSE:

Chrysler Capital objects to this Request on the ground that it is duplicative of Request for Production No. 9. Following a reasonable search, Chrysler Capital was not able to identify any

6

91458938v.1

responsive, non-privileged documents within Chrysler Capital's possession, custody or control relating to "any and all insurance policies or agreements Defendant can identify that Chrysler Capital carries on its own, or either of its parent companies (Santander or FCA), or that any of its vendors, including EFG, relative to this action carry, may have any type of 'errors and omissions' insurance coverage that might be liable to satisfy all or part of a possible judgment or settlement in this action."

AMENDED RESPONSE:

Chrysler Capital responds as follows: Following a reasonable search, Chrysler Capital was not able to identify responsive, non-privileged documents within Chrysler Capital's possession, custody or control relating to "any and all insurance policies or agreements Defendant can identify that Chrysler Capital carries on its own, or either of its parent companies (Santander or FCA), or that any of its vendors, including EFG, relative to this action carry, may have any type of 'errors and omissions' insurance coverage that might be liable to satisfy all or part of a possible judgment or settlement in this action." Chrysler Capital is not relying on any insurance policy that may be liable to satisfy all or part of a judgment in this case.

Dated: March 15, 2021

/s/ *H. Straat Tenney*
H. Straat Tenney (*pro hac vice*)
LOCKE LORD LLP
200 Vesey Street, 20th Floor
New York, NY 10281
Tel: 212.912.2915
straat.tenney@lockelord.com

Thomas J. Cunningham
Florida Bar No. 121997
LOCKE LORD LLP
777 South Flagler Drive
Suite 215 East Tower
West Palm Beach, FL 33401
Tel: 561.820.0201
tcunningham@lockelord.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that on this 15 day of March 2021, I served a true copy of the foregoing by email on Plaintiff Mark W. Lilly.

*/s/ H. Straat Tenney*
H. Straat Tenney

Exhibit #4

## THE CHOICE IS YOURS
Consider these points when making your decision to buy or lease.

**BEFORE BUYING, think about...**

- How many miles do you drive per year?
- Do you generally trade your vehicle or sell it?
- How often do you trade or sell your vehicle?



- » You have the option to buy the vehicle
- » You have the option to trade the vehicle and apply the positive equity to a new vehicle
- » You have the option to turn in the vehicle and not owe any additional monthly payments



- » Release of new models before trade-in
- » Market conditions and gas prices
- » Manufacturer rebates and incentives

## CUSTOMER BENEFITS OF LEASING

- » Guarantees future value protection against depreciation
- » Eliminates any resale risk
- » Provides more car for less money
- » Allows for lower monthly payments than a retail sale
- » Promotes lower maintenance costs as a result of optional dealer service contracts
- » Allows you to keep the vehicle or trade it in for a new one when you are ready

WITH LEASING, you only pay for what you use

CHRYSLER



CONFIDENTIAL

CC00076

Exhibit #5

# SHOULD YOU LEASE OR BUY?



## What do you really own?



*Depreciated vehicle value determined by primary insurance settlement. Graph is for illustrative purposes only.

## Options at trade in

- **Turn in** your vehicle and walk away
- **Trade in** your vehicle and apply positive equity toward next vehicle
- **Buy** your vehicle for a pre-determined Guaranteed Future Value

## Short term leasing benefits

- Lease payments may be lower than conventional financing
- Reduced or eliminated repair costs
- Lower maintenance costs
- You can enjoy a new car more often

**Bottom Line: Only Pay For What You Use**

CONFIDENTIAL    CC00576



**Before you decide, ask these questions**
- How many miles do you drive per year?
- Do you trade in your vehicles or resell them?
- How often would you like to trade in your vehicle?
- Will your new vehicle be for personal or commercial use?

**Leasing benefits**
- You can drive a better equipped vehicle for less
- Eliminates resale risk
- Guaranteed Future Value
- Transfers "market risks":
  - New model designs
  - Rebates and incentives
  - Bad press
  - Discontinued model
  - Increase in gas prices
- Easy trade-in options mean no need to shop around:
  - Turn it in
  - Trade it in
  - Buy it

CONFIDENTIAL

CC00577

## *Exhibit 6*

### Plaintiff Lilly's & Defendant's Discovery Communications"

*The following are copies of specific emails, documents, and relative communications between both parties in attempts to resolve the Plaintiff's discovery disputes:*

**Mark Lilly <mlilly4u@gmail.com>**   Tue, Mar 16, 4:13 PM
                                                                       (11 days ago)
to Straat

Mr. Tenney,

I've reviewed your amended responses to my discovery requests per the court order. I'm disappointed, but not surprised by your client's responses, though consistent with your usual "deny and delay" tactics.

It seems to me that you again used the same "boilerplate" objections the court warned not to be used, then proceeded to partially
answer or provide additional, but not entirely relevant documents that omit the specifically requested documents?
In an effort again to attempt to communicate with you to resolve our discovery conflicts and to try and reach a quick settlement
to this legal matter, I offer my simple review and questions regarding your responses and production, before I file another
Motion to Compel or simply include my points in my new response to your Motion for Summary Judgment.

<u>So now Greg Gordon is stating that he did not show me the "Placemat" during our 1/16/19 meeting and claims he
showed me the Chrysler Capital's placemat/educational flyer?</u>

So Greg has been decided to lie, or forced to lie in fear of his job?
So I guess it will be his word against mine?
Or you are putting the burden of proof of which placemat he showed me?
If so, then I'll ask you to consider these questions/facts:
Why would I claim that Greg showed me the Placemat that I had seen at an FCA dealer in 2017, and took dated photos
for proof, if it wasn't the exact same Placemat?
Why would I email FCA executive Bob Clark after my meeting with Greg informing him of the trademark infringement
(placemat and video) discovered at my meeting with Greg?
I've given testimony that I had never seen the Chrysler Capital placemat or "educational flyer" you call it now, until our
discovery in 2020. So Greg Gordon's new statement contradicts his and your client's past admissions that Chrysler Capital

1

didn't produce the Placemat Greg showed me at our meeting, EFG did?
So in closing, I'll ask you this; would Greg/Chrysler Capital be committing perjury if I presented evidence such as
dated photos of the actual placemat that Greg showed me during our meeting?

It seems to me that the documents you presented, such as the EFG Invoices, Presentations/Slides and Training Proposals etc.
all provide evidence that Chrysler Capital's did hire and pay EFG as a vendor to provide lease training to Chrysler Capital
employees so that Chrysler Capital's field teams could deliver the lease training to their FCA dealers.

However, while all of the documentation is evidence of Chrysler Capital's and EFG's working relationship regarding leasing
and lease training, it still fails to provide the specifically requested production/answers regarding Chrysler Capital's use of
the "Placemat". You claim and or omit it from all of the new additional and somewhat relevant documentation dating back
further than expected or I requested. As I have stated, during my meeting with Mr. Gordon, he told me that the Placemat
was the "leasing aide Chrysler Capital provided to their FCA dealers in 2017 and 2018." So I believe the lease training documentation
you've provided to me, dating back as far as 2013, while relevant in the fact it provides an additional example of infringement
(CC's flyer utilizing my trademarked slogan) it does not fully and truthfully provide all of the relevant lease training production
possible, specifically not the "Placemat" that we do both agree exists, and was utilized at some point?

So regardless of who (CC's own reps or EFG reps) delivered lease training to FCA dealers, this training utilized my trademarked
slogan in both the "Placemat" (I claim was used, and was told it was by an FCA dealer and by Greg Gordon) and CC's "flyer".

These are just the key points I plan to address and present in my next motion to compel or response to the court.
If you would like to discuss these points by phone, please let me know a time you are available before Noon tomorrow.

Regards,
Mark Lilly

2

**Tenney, H. Straat**             Mar 22, 2021, 11:51 AM
(5 days ago)

to me, Thomas

Mr. Lilly,

Thanks for your message. We will communicate your counteroffer to Chrysler Capital. We disagree with your statements concerning Greg Gordon and the Placemat. However, it is irrelevant to your trademark infringement claims whether Mr. Gordon showed you the EFG Flyer or the CC Flyer, so I'm confused why you are focusing on this. Furthermore, you have never produced images of the flyer that Mr. Gordon allegedly showed you at the January 2019 meeting. You have only sent images of the EFG Flyer that you saw at the FCA dealership in Tallahassee in the summer of 2018. If you have images of the flyer that Mr. Gordon showed you, then you have an obligation to produce these documents immediately. The Judge will not take kindly to your threats to present evidence "such as dated photos of the actual placemat" that Mr. Gordon showed you when you have not even shared the evidence with us in advance.

With regard to your second Motion to Compel, please specify which documents that you asked for, but which Chrysler Capital or EFG refused to produce. You claimed that Chrysler Capital failed to provide documents concerning Chrysler Capital's use of the EFG Flyer. As we have stated multiple times, Chrysler Capital has searched for, but cannot locate, any evidence that the EFG Flyer was given to or distributed to any dealers whatsoever. Further, EFG looked for this information and found no responsive documents that concerning the distribution of the EFG Flyer (aside from what we already produced).

Finally, with regard to the schedule, we think that the parties should jointly ask that the Court continue (extend) any further deadlines so that the parties can focus on the summary judgment briefing and wait for the Judge's order on that. Chrysler Capital is not interested in mediating this case before the Judge rules on our summary judgment motion because we strongly believe that the Judge will dismiss this case outright. We will therefore oppose any motion to compel Chrysler Capital to mediate in advance of the summary judgment decision.

Best,
Straat

H. Straat Tenney
**Locke Lord LLP**
T: 212-912-2915
C: 646-283-2969


**Mark Lilly <mlilly4u@gmail.com>**        Mon, Mar 22, 5:21 PM
(5 days ago)

to Straat

Mr. Tenney,

Thank you for communicating my settlement proposal to your client. Hopefully, they will respond quickly enough for us to
execute a settlement agreement by 3/31.

In reply to the other items in your email;

3

You continue to state that it is irrelevant to my case whether Greg showed me the EFG "Placemat" (the correct term used in my complaint)
or your so-called "CC Flyer" and that you are "confused" why I am focusing on this". As I have stated, over and over, and for the last time here,
Greg showed me the EFG Placemat during our meeting, which he stated that "this is the tool/lease aide we gave our dealers last year". This is
the basis of my case as the placemat he showed me was the exact same placemat I found 18 months earlier in the FCA dealership. In addition to Greg
Gordon's admission that CC used the Placemat (whether CC produced it or a vendor produced it) is the key evidence that CC is responsible for the
infringement. Of course, that is why your client has continuously attempted to deny or distance themselves from the Placemat. From the beginning,
immediately following my meeting with Greg Gordon, I have referred to the Placemat in my initial communications with Chrysler Capital and provided
my dated photos as evidence of the Placemat, as well as in my legal complaint filed in April 2019. Why would I present the Placemat as my evidence and
file a Federal lawsuit if the Placemat Greg presented to me wasn't the same Placemat I had been given by an FCA dealer, who told me they got it from CC,
but I couldn't find any proof of that? The only dated photos I have of the Placemat are the ones I have already provided to you and the court. Although
I regret now, not accepting a copy of the Placemat Greg offered to me, or, at least took pictures of it during our meeting, but I didn't want to alarm him
that I had already seen the Placemat 18 months earlier, as I was still hoping to sell my trademarked program to CC. But you already know all of this,
which is why I suspect your client and Greg changed their statements, claiming that Greg did not show me the Placemat, as your "his word against mine"
defense, right? My hypothetical mention of the possibility I had photo evidence that Greg showed me the placemat during our meeting, and your response
informing me I would have "an obligation to produce these documents immediately" confirms your awareness of this fact and the weight of the Placemat
as evidence in my case.

With regard to my Second Motion to Compel; your Amended Responses in response to the court's order mostly contain responses and evidence
provided by your vendor EFG, not CC? More importantly, as I will share with the court, all of your discovery production has consistently only been
from the past, irrelavant years (2012-13) and not from the most recent years relative to the case. The Placemat's copyright states the year 2014, which
means it was utlized after 2014, which supports Mr. Gordon's admission to me during our meeting that the Placemat was used in 2017-2018. So I
believe that you may have produced some documentation, but not all relevant production. You even state that EFG couldn't find any evidence
that the Placemat was utilized in any way or in any dealerships. Yet, you provided a copy of the EFG Placemat in your latest production? Remember,
I spoke to the EFG representative Steve Roennau personally, who both boasted he/EFG had provided lease training to CC and FCA dealers, as their

4

website even claimed, and that they offer their "leasing aide" (the Placemat) which Steve offered to sell to my client dealers.  All of which I will share
in my response.

I've wasted enough time again, repeating myself and arguing with you instead of writing my response to the court.

Finally, in regard to my plan to request the Judge to send us to mediation; Of course, you don't want to go to Mediation, and you want to wait, your
standard "deny and delay" tactic, for the Judge to grant your Motion for Summary Judgement, as you strongly believe the Judge will dismiss the case
outright.  Well, I'm hoping the Judge will grant my request to keep us on pace with our schedule and send us to Mediation, read my response and
evidence of your client's "contradictions" and lack of discovery production and once again, deny your motion to dismiss the case.

Please let me know as soon as you can if your client wants to pay my last settlement offer before I file my motions and response.

Regards,

Mark Lilly